IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORI DAVIS, ) | |
| ) | |
|       Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CV-916 JHP |
| ) | |
| AUTOZONERS, INC., a foreign corporation, ) | |
| AUTOZONE, INC., a foreign corporation, ) | |
| d/b/a AUTOZONE, ) | |
| ) | |
|       Defendant. ) | |

### ORDER AND OPINION

Before the Court is Defendant AutoZone's Motion for Summary Judgment, Plaintiff's Response in opposition, and Defendant's Reply thereto. Upon review of these pleadings, and for reasons stated herein, Defendant's Motion is GRANTED.

### Background

Plaintiff Lori Davis was employed by Defendant AutoZone from 1995 until 1997. During this time, Plaintiff had a brief consensual sexual relationship with AutoZone manager Jesse Robbins. Plaintiff's resignation in 1997 had nothing to do with Robbins. In 1998, Plaintiff resumed employment with AutoZone. In 2001, she was assigned to the Southwest Boulevard store, where she held a managerial position. Likewise, in 2001, Jesse Robbins began work at the Southwest Boulevard store as store manager. Plaintiff claims that about six months after taking over as store manager, Robbins attempted to hug and kiss her in an effort to resume their prior relationship. Plaintiff rebuffed Robbins's advances and told him she was happily married. She did not report the unwelcome sexual contact, although procedures for doing so were in place

1

pursuant to AutoZone's "zero tolerance" sexual harassment policy. After that one incident, Robbins never made any other sexual overtures toward Plaintiff. However, from that time, Plaintiff noticed a shift in Robbins's attitude toward her. Specifically, Robbins began yelling at Plaintiff and verbally abusing her about once every two weeks, generally in relation to some work-related issue.

At some point, in response to this treatment, Plaintiff requested a transfer from the Southwest Boulevard store. In October 2003, Plaintiff requested a meeting with district manager Tuck Archer and regional human resources manager Grant Bagwell to discuss Robbins's behavior. They met two days later. Again, Plaintiff did not discuss Robbins's sexual overture, but instead focused on his yelling. Archer did not believe that Robbins's yelling amounted to unprofessional behavior; however, he did ask Robbins to apologize to Plaintiff. Approximately one month later, Robbins gave Plaintiff her performance review, in which he rated her as "meets expectations," and gave her a raise of ten cents per hour. Plaintiff indicated on the performance review form that, based on her contributions to the betterment of the company, she felt like she deserved a better raise. The next day, when Robbins was not at the store, Plaintiff was involved in a dispute over scheduling with some of her co-workers. Certain of her remarks were repeated to Robbins, who then called Plaintiff and allegedly told her that he wanted her out of the store. Plaintiff immediately gave her keys to another employee and left the store.

Plaintiff subsequently contacted Archer and Bagwell to discuss the situation, but did not get a satisfactory resolution. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission in April 2004. After receiving the charge, Bagwell took statements from Jesse Robbins, Tuck Archer, and another AutoZone employee, Diane Sobek,

and AutoZone investigated Plaintiff's sexual harassment and retaliation complaints. The instant lawsuit was filed in state court in October 2004, and removed to this court in December 2004.

## Discussion

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249. The presence of a genuine issue of material fact defeats the motion.

In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999). The Court also interprets the rule in such a way as to isolate and dispose of factually unsupportable claims or defenses. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is also appropriate if any element of the prima facie case lacks sufficient evidence to require submission to a jury. Anderson v. Liberty Lobby, 477 U.S. at 248-49.

Plaintiff's claims here are premised on Title VII of the Civil Rights Act of 1964 which makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U. S. C. § 2000e-

2(a)(1). Title VII is not a "general civility code" or a statute to redress "the ordinary tribulations of the workplace." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999). Instead, Title VII makes actionable sexual harassment which is "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). In order to establish such a claim, a plaintiff must show (1) membership in a protected group, (2) unwelcome harassment, (3) the harassment was based on plaintiff's membership in the protected group, and (4) altered employment conditions. Seymore v. Shawver & Sons, 111 F.3d 794, 797 (10th Cir. 1997). The plaintiff must also show that the work environment was both objectively and subjectively hostile, based on the totality of the circumstances. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).

Here, Plaintiff's membership in a protected class is undisputed, as is the fact that she suffered unwelcome harassment, which she subjectively considered to be hostile. Whether Plaintiff can satisfy the remaining prongs, however, is unclear. Failure to establish any element of the case will result in summary judgment in favor of the defendant. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. at 247-48.

**I. Plaintiff cannot state a viable claim for hostile work environment.**

Plaintiff admits that she never reported Robbins's alleged sexual overture, even when she later complained about his yelling. Other than the time frame in which Plaintiff says the verbally abusive behavior began (*i.e.*, soon after her rejection of Robbins's advances), Plaintiff does not relate the yelling to her gender or, more particularly, to the relationship between Robbins and her. Harassing behavior need not be overtly sexual in nature, but it must consist of unequal treatment that would not occur but for the plaintiff's gender. Williams v. GMC, 187 F.3d 553,

564-65 (6th Cir. 1999) (citing, *inter alia*, Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987), for the proposition that actionable sexual harassment need not be explicitly sexual). Here, Plaintiff admits that Robbins yelled at her for reasons relating to work. She does not allege that the verbal abuse was gender-specific or motivated by anti-female animus. At most, she raises an inference that Robbins yelled at her in retaliation for her rejection of his advances.

After Robbins started yelling at her, Plaintiff perceived the workplace as "hostile." However, she continued to work under Robbins's supervision for around eighteen months, seemingly without adverse effects on the terms and conditions of her employment.[1] On her last performance review, Plaintiff received a rating of "meets expectations" from Robbins, and she was given a ten cent per hour raise. Plaintiff indicated on her review form that she felt like she deserved a higher raise in consideration for her hard work and extra time.[2] In no way did she imply that she felt her raise was lower because of Robbins's ill feelings toward her or any type of gender discrimination. The day after her review, Plaintiff was involved in a dispute at the store about scheduling. Robbins was not at work, but he called Plaintiff and yelled at her for questioning his authority to make the schedule. Plaintiff then turned in her keys and left the store, but admits to some confusion about whether she quit or was fired.

---

[1] Robbins became the store manager at the Southwest Boulevard location in 2001. The alleged sexual encounter between Robbins and Plaintiff took place within the first six months of his employment. During the entire time that Robbins and Plaintiff worked together, Robbins conducted three reviews of Plaintiff's performance. Plaintiff received her lowest rating on her first review dated April 2002; the two later reviews both indicated that Plaintiff met expectations. Plaintiff's last day on the job was the day after her last performance review on November 12, 2003.

[2] Plaintiff was at the top of the pay scale at the time this review was conducted.

Even viewing all circumstances in light most favorable to Plaintiff, the Court does not find that Robbins's one isolated sexual overture toward Plaintiff, plus his occasional verbally abusive behavior, is severe or pervasive enough to constitute an objectively "hostile" workplace.[3] First, the Court notes that a "hostile work environment" for purposes of Title VII is not an environment where people are "mean" to each other, which is what Plaintiff seems to complain of here, but rather is "a workplace permeated with **discriminatory** intimidation, ridicule and insult." Harris, 510 U.S. at 21 (quoting Meritor Sav. Bank, 477 U.S. at 65) (emphasis added). Aside from the isolated incident of unwanted sexual contact, the conduct complained of here is not, on its face, discriminatory. Furthermore, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (citing Faragher v. Boca Raton, 524 U.S. 775, 788 (1998)). Plaintiff never reported Robbins's sexual overture, even though a sexual harassment policy was in place at AutoZone, and admits that it was never repeated. There is no evidence that Plaintiff felt physically threatened by Robbins, or that the incident affected her ability to do her work at AutoZone. Thus, the Court cannot find that this isolated incident was sufficient to trigger the protections of Title VII.

---

[3]Where a plaintiff presents **no** evidence that verbal assaults or other misconduct were instigated by the defendant's anti-female animus, or that her gender was in any way a motivating factor behind the defendant's abuse, "the Court need not decide whether [the incidents complained of] are significantly severe or humiliating so as to rise to the level of creating a hostile workplace," no matter how "subjectively frustrating" or "unpleasant" the situation was. Wynn v. Paragon Sys., 301 F. Supp. 2d 1343, 1352 (S.D. Ga. 2004). Here, Plaintiff's evidence of discrimination is limited to the inference that Robbins yelled at her because she rebuffed his attempt to rekindle their previous sexual relationship. Certainly none of her formal complaints contained this information. Robbins denies that the alleged sexual overture ever took place, or that he ever yelled at Plaintiff.

Robbins's subsequent yelling could be perceived as retaliatory, and therefore part of the overall sexual harassment alleged by Plaintiff.[4]  Plaintiff states that after she rebuffed Robbins's sexual overture, he yelled at her at least once every two weeks.  However, "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview."  Harris, 510 U.S. at 21.  Plaintiff admits that, when Robbins yelled at other employees, they would take it in stride or even yell back at him, but she would be reduced to tears.  Archer, who allegedly witnessed one episode of what Plaintiff called "verbal abuse," did not even think that Robbins acted unprofessionally.  Even if Robbins's attitude toward Plaintiff was negatively affected by her rejection of his advances, his yelling was not objectively discriminatory or offensive in substance, but was related to the situation at work.  Based on these observations, the Court cannot find that a "reasonable person" would find that Robbins's occasional yelling was severe or pervasive enough to create a hostile work environment.

## II.  Plaintiff cannot prove employer liability.

Even assuming *arguendo* that the behavior complained of here constitutes actionable sexual harassment, Plaintiff cannot prove employer liability.  An employer is subject to vicarious liability for a hostile work environment only if it results in a "tangible employment action" by the supervisor against the victimized employee.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).  In most cases, a tangible employment action inflicts direct economic harm on the

---

[4]Plaintiff alleged that the commencement of Robbins's verbally abusive behavior coincided with her rejection of his advances.  However, she also admitted that Robbins was under increased stress on the job around that time, and became irritable when upper management visited the store.

7

employee. Id. at 762. Here, although Plaintiff is "confused" about whether she quit or was fired, the undisputed evidence is that Plaintiff turned in her keys and left the store of her own volition, absent any "official [exercise of] power of the enterprise" over her.[5]

Absent proof of a tangible employment action, the employer may assert the affirmative defense that (1) the employer exercised reasonable care to prevent and correct any harassing behavior, and (2) the plaintiff unreasonably failed to take advantage of any corrective opportunities provided by the employer or to otherwise avoid harm. Id. at 765.[6] Here, it is undisputed that AutoZone had a sexual harassment policy in place at the time of the alleged incident, and that Plaintiff was familiar with the policy.[7] The Seventh Circuit has previously found, and this Court agrees, that AutoZone's anti-harassment policy and procedure was sufficient to show that AutoZone took reasonable care to prevent harassment. *See* Shaw v. AutoZone, 180 F.3d 806, 812-13 (7th Cir. 1999).

It is also undisputed that Plaintiff did not follow the complaint procedure outlined in the

---

[5]Plaintiff states that she was angry after Robbins yelled at her, and left the store despite being told not to, because she feared what he might say or do when he got there. She did not leave because of an official company act. Furthermore, the only documentation related to her last day is a "Termination Report" dated November 14, 2003, which states that Plaintiff "abandoned" her job. Defendant further maintains that it considers Plaintiff's act of leaving the store in the middle of her shift to be a "voluntary resignation."

[6]This defense is **not** available "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Ellerth, 524 U.S. at 765. Here, if Plaintiff was, in fact, fired from AutoZone, the Court finds that she was terminated because she abandoned her job, and not because of discriminatory animus.

[7]Plaintiff received an employee handbook on at least three occasions during her employment with Autozone, and each time acknowledged by her signature that she had read and understood the policies contained therein. She also received additional information on AutoZone's sexual harassment policy in her capacity as a manager for the store.

policy. Thus, AutoZone had no **actual** notice of Robbins's alleged conduct toward Plaintiff, and therefore had no timely opportunity to investigate and correct the situation.[8] Where, as here, the employer has "provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense[, and i]f the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so." Faragher, 524 U.S. at 806-07. In other words, had Plaintiff reported the initial incident of harassment, or even the initial onset of Robbins's yelling episodes, AutoZone could have thwarted the creation of the allegedly hostile work environment. "[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of

---

[8]Plaintiff argues that AutoZone "should have known" about her hostile work environment because Robbins had a warning in his personnel file relating to a sexual harassment complaint he received in 1996, for asking an employee – **not** Plaintiff here – for a date. A few courts have held that "where a plaintiff brings a claim against an employer predicated upon allegations of workplace sexual harassment by a company employee, and where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employee knew or should have known, summary judgment may not be granted in favor of the employer." *See, e.g.*, Kerans v. Porter Paint Co., 575 N.E.2d 428, 433 (D. Ohio 1991). In Kerans, however, the plaintiff sued her employer for negligent hiring. Moreover, the sexual harassment she complained of was far more explicit, threatening, and pervasive than the behavior complained of here. Finally, in Kerans, the employer had taken **no** corrective action against the harasser, whereas here, Plaintiff's "smoking gun" (*i.e.*, the warning in Robbins's file) clearly shows that AutoZone **did** take corrective action. There is no evidence in the record that Robbins harassed anyone else until the incident alleged in this lawsuit (which Robbins denies). The Court cannot agree that AutoZone is not entitled to summary judgment simply because Robbins allegedly attempted to pursue romantic relationships with two separate co-workers more than seven years apart, especially when he immediately quit making sexual overtures toward Plaintiff here the first and only time she asked him to.

the defense." Id. at 807-08; *see also* Conatzer v. Med. Prof'l Bldg. Servs., 255 F. Supp. 2d 1259, 1270 (N.D. Okla. 2003) (finding plaintiff's two-week delay in reporting the first significant incident of harassment to be an unreasonable failure to take advantage of her employer's reporting system). Here, Plaintiff's complete failure to avail herself of AutoZone's reporting mechanism was obviously unreasonable, first because Plaintiff knew that AutoZone had a "zero tolerance" approach to sexual harassment, and second because Plaintiff was subjectively offended by Robbins's behavior to the point of crying whenever he confronted her.[9] The Court therefore finds that AutoZone is entitled to the affirmative defense and is not liable for Robbins's inappropriate behavior toward Plaintiff, if any.

### III. Plaintiff cannot prove a prima facie case of retaliation.

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) she suffered an adverse employment action, and (3) the adverse action was causally related to the protected activity. Wynn, 301 F. Supp. 2d at 1353-54. Failure to establish any element of the case will result in summary judgment in favor of the defendant. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. at 247-48.

Here, Plaintiff simply cannot prove that she engaged in protected opposition to sexual

---

[9]Plaintiff did report to Archer and/or Bagwell that Robbins was yelling at her on at least two occasions, but did not share what she believed his motivation to be. The Court notes, however, that "mere unprofessional conduct, even if imbued with sexual or romantic overtones, does not [necessarily] create a duty under Title VII to take corrective action." Conatzer, 255 F. Supp. 2d at 1269. Plaintiff complains that Archer and Bagwell did not immediately relate her complaints about Robbins "being mean" to the previous warning Robbins received for violating AutoZone's sexual harassment policy. Given the court's observation in Conatzer, however, even if they had made the connection, they very well could have considered it to be innocuous.

harassment. Although Plaintiff complained that Robbins was "mean," and that they did not get along, and that he yelled at her, she never told anyone about his alleged sexual misconduct toward her, or about her belief that his subsequent animus toward her was motivated by gender bias or other inappropriate personal feelings. AutoZone therefore had no **actual** notice that Plaintiff believed she had suffered sexual harassment and/or discrimination. As previously discussed, being "mean" is not an unlawful employment practice. Because Plaintiff never told AutoZone about the alleged sexual harassment and/or discrimination, her complaint is not protected under Title VII. *See* id. The Court has previously discussed its findings that neither Robbins nor AutoZone took any "tangible employment action" toward Plaintiff. For these reasons, Plaintiff's claim for retaliation fails and Defendant is entitled to summary judgment.

### IV. Plaintiff cannot maintain her state law claim for constructive discharge.

Under Oklahoma law, a constructive discharge occurs when "an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no choice but to quit." *See, e.g.,* Collier v. Insignia Fin. Group, 981 P.2d 321, 322 n.1 (Okla. 1999) (quoting Marshall v. OK Rental & Leasing, 939 P.2d 1116, 1119 (Okla. 1997)). The working conditions are evaluated on the same "reasonable person" basis employed previously herein to determine that the harassment alleged by Plaintiff here was not so severe and pervasive as to constitute an objectively hostile work environment. Thus, Plaintiff's constructive discharge claim would necessarily fail on its merits. More importantly, however, because Plaintiff has a remedy under statutory law (*i.e.,* Title VII), she cannot maintain a separate claim for constructive discharge under Oklahoma common law. Clinton v. State ex rel. Logan County Election Bd., 29 P.3d 543, 546 (Okla. 2001).

## **Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED in its entirety, and this case is terminated.

/s/ James H. Payne
James H. Payne
United States District Judge
Northern District of Oklahoma